## THE STATE v. LORTZ, Appellant.

Division Two, January 31, 1905.

1. **ASSAULT WITH INTENT TO KILL: Aggressor: Conflicting Evidence: Province of Jury.** Where, in a prosecution for assault with intent to kill, the evidence is conflicting as to who was the aggressor, it is the province of the jury, who see and hear the witnesses, to determine that fact, and the appellate court will not interfere with their verdict.

2. ———: **Punishment.** A sentence of two years' imprisonment in the penitentiary for assault with intent to kill, being the minimum punishment prescribed by law for such offense, is not a cruel or unusual punishment.

State v. Lortz.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

AFFIRMED.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

GANTT, J.—This is an appeal from a conviction of an assault with intent to kill with malice afore-thought, in the circuit court of the city of St. Louis. On the seventeenth day of December, 1903, the assistant circuit attorney of St. Louis filed his information in due form verified by the affidavit of Patrick Layden, a competent witness, charging the defendant with having, at the city of St. Louis, on the eighth of June, 1903, feloniously, willfully, on purpose and of his malice aforethought, made an assault on Patrick Layden, and a certain pistol loaded with gunpowder and leaden bullets, then and there feloniously, willfully, on purpose and of his malice aforethought did shoot off, at, against and upon the said Patrick Layden, then and there giving to the said Patrick Layden, in and upon the head and body of him, the said Patrick Layden, with the said pistol, two wounds with the intent then and there, him, the said Patrick Layden, feloniously, willfully, on purpose and of his malice aforethought, to kill, contrary to the statute in such case made and provided, and against the peace and dignity of the State.

The defendant was duly arrested and arraigned and entered his plea of not guilty.

The cause was tried and defendant convicted and his punishment assessed at two years in the penitentiary. The defendant is not represented in this court by counsel, but as in duty bound we have examined the whole record to see if error was committed against the defendant.

The evidence discloses that on the eighth of June, 1903, the prosecuting witness, Patrick Layden, with his family, consisting of his wife and two small children, resided in the upper part of a building known as No. 2403 Sarah street, St. Louis, and at the same time the defendant with his family occupied the lower floor of the same building or flat. Prior to the date of the difficulty between these two men, it appears that defendant's neighbors had petitioned the agent in charge of these flats not to lease it to defendant any longer and a bad state of feeling was thus engendered between defendant and the prosecuting witness who had signed said petition.

The evidence established that the defendant was a stationary engineer and for some weeks prior to this difficulty had been employed at the World's Fair. It was his custom to leave home at or about nine o'clock each night to go to his work as his work was at night from eleven o'clock to seven next morning. During the day he would be at his home, and slept during the day. On the eighth of June, he complained that his rest was disturbed by the noise made by Mrs. Layden in the upper flat and called to her to desist. On the part of the State, Mrs. Layden and Mrs. McAdams, a near neighbor, both testified that the defendant on the afternoon of that day came out in the back yard of these premises with a shotgun in his hand and threatened to shoot Mrs. Layden, calling her a vile name.

The prosecuting witness, Layden, returned from his work about six o'clock, got his supper and after supper walked over to Easton avenue. While he was gone, his wife and Mrs. McAdams heard defendant threaten Layden's life and his wife walked down the sidewalk and met him on his return. Together, they started to enter the door which led from a small vestibule up the stirway; Layden was in front and his wife following. According to the testimony of Layden and

wife, corroborated by Mrs. McAdams, just as Layden took hold of the knob of his door to go up the stairway, defendant came out or reached out from his door, which opened on the same little vestibule and caught Layden by the collar back of his neck and threw him or dragged him to the floor within defendant's front room and at the time said, "You son-of-a-bitch, I have got you now." While Layden was yet down on the floor, defendant shot him twice; one bullet entered the left leg near the knee and the other entered between the scrotum and the anus. A third shot was fired which struck no one. A hand-to-hand struggle then ensued, and Mrs. Layden ran into the room and assisted in disarming defendant. In this struggle, both Layden and defendant bit each other. There was also evidence that defendant was bruised by falling against the wall. After the revolver was secured, Mrs. Layden assisted her husband to the door and up the steps. A physician was called and temporary relief was given Layden and then he was sent to the city hospital, where an operation was performed to relieve the wound in the region between the scrotum and anus. The ball in the leg had never been found at the time of the trial. Layden was kept in the hospital some two or three weeks. On the part of the defendant, his own evidence, corroborated in part by his wife and his little daughter and to some extent by a young girl, tended to prove that he was sitting inside of his front door about nine o'clock that evening and that when Layden came to his vestibule he lingered a moment at his door and then, without warning, stepped quickly into defendant's door and struck him a blow on the jaw. This dazed him and he partly rose to his feet and thereupon Layden rushed on him and struck him another blow on the left side of his neck, felling him to the floor, and then jumped on defendant with both knees on his stomach and he got down on him and bit him on the left side of the face. A scuffle ensued, and defendant worked

himself around to his pistol which was lying by the chair he had been sitting on. He testified he didn't want to shoot Layden, but he kept choking him, and seeing him reach in his left pocket, he shot him in the knee. Some one else then came into the room and was trying to strike defendant and he shot a second time, endeavoring to hit Layden in the other knee. He testified· Mrs. Layden bit his hand trying to make him give up the revolver. He shot the third shot accidentally in the scuffle over the revolver. He denied threatening Mrs. Layden that afternoon. The defendant offered evidence tending to show he was a peaceable, law-abiding citizen. Other facts may be noted in the opinion, if necessary to an understanding of the propositions involved.

I.   From the foregoing summary it is evident this was a fighting case, one in which we may expect and usually find strong contradictions in the evidence.

In the absence of any brief for defendant, we will be guided largely by the grounds of his motion for a new trial.

While the testimony on behalf of the State and that for defendant was radically variant, it is not true that the verdict was unsupported by the evidence. If the jury believed the prosecuting witness and the other witnesses for the State, there was ample proof to sustain the verdict. If their evidence was true, and the jurors were to determine that, there was an unprovoked and malicious assault by the defendant on Layden. The defendant shot Layden twice, inflicting serious wounds on him, ·so that the case resolved itself largely, if not entirely, into a question of veracity between the actual combatants and their immediate relatives as to who was the aggressor in this unfortunate affair. Upon the jury, who saw and heard the witnesses, devolved the duty of determining this fact. If they had found Layden was the aggressor, their verdict would not have been disturbed by this court,

neither are we at liberty to disregard their finding that defendant was the aggressor, and if so was guilty of a most inexcusable and deadly assault.

II.   We find nothing to support the assignment of the introduction of incompetent evidence nor the refusal of any competent evidence offered by defendant.   In fact there were few objections made and the court proceeded with a careful regard for the rights of the defendant throughout.

III.   The instructions were such as have often met the approval of this court and it is useless to reproduce them in this opinion.   The issue was simple and the court defined the offense and required the jury to find every essential fact beyond a reasonable doubt and gave a most liberal instruction in behalf of defendant on the right of self-defense.

The court properly instructed on the presumption of innocence and reasonable doubt and what constituted the same, together with the previous good character of the defendant and the effect of the same upon the finding of the jury, as well as upon the credibility of witnesses of which the jury constituted the sole judges.   In addition thereto, the court properly instructed the jury that the defendant and his wife were competent witnesses to testify in defendant's behalf, but that they might consider the interest which they had in the result of the case and the marital relations that existed between them, in passing upon the credibility of their testimony.   No other instructions were necessary in this case.

IV.   There is no merit in the point made that a sentence to two years in the penitentiary for the offense of which defendant was found guilty was a cruel or unusual punishment.   The jury having found defendant guilty of an assault with intent to kill with malice aforethought, gave him the minimum punishment prescribed by law.   Doubtless they were moved

to do so from the fact that he had a family dependent upon him, and was an industrious mechanic of good character, but certainly there is no evidence of passion or prejudice in the case.

Upon a review of the whole record, we find no reversible error, and the judgment and sentence must be and is affirmed.

All concur.